Merle GARNER, Appellant,

v.

STATE of Indiana, Appellee.

No. 49A02–8810–PC–383.

Court of Appeals of Indiana,
Second District.

Feb. 28, 1990.

Susan K. Carpenter, Public Defender, John Pinnow, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Merle Garner appeals the denial of his amended petition for post-conviction relief.

We reverse.

## ISSUE

Garner presents several issues for our review, one of which is dispositive: Whether error occurred when Garner was found guilty and sentenced for robbery as a class A felony where the amended information charged him with robbery as a class B felony and where, in addition, the record is devoid of evidence of serious bodily injury.

## FACTS

The information charged that Garner did knowingly, while armed with a deadly weapon ... take from the person or presence of DAVID BURNETT property ... by putting DAVID BURNETT in fear or

by using or threatening the use of force on DAVID BURNETT which resulted in bodily injury to EARL YOUNG, to wit: GUNSHOT WOUND IN THE RIGHT ARM....

Trial Record at 6. Garner was convicted of robbery, a class A felony, after a bench trial. He was sentenced to serve the presumptive sentence of thirty years. He appealed.

The facts relating to the underlying conviction, as set forth by our supreme court in Garner's direct appeal, are:

> On the evening of November 15, appellant entered a small private social club. The club was not particularly exclusive and if one were known he could gain admittance. The persons attending the club could engage in illegal games of chance.
>
> After drinking a beer, appellant fired a warning shot and announced his intention to rob the club and the "members" who were present. Although the evidence is in conflict as to how many shots appellant fired, it is clear that he fired his weapon at least once, since the bartender was grazed by a bullet, and appellant admitted on redirect examination that he fired his weapon once.

*Garner v. State* (1980), 274 Ind. 675, 413 N.E.2d 584, 584–5.

The supreme court affirmed Garner's conviction concluding there was sufficient evidence from which the fact finder "could find beyond a reasonable doubt that [Garner] committed armed robbery and that injury was inflicted during the commission of the crime." *Garner,* 413 N.E.2d at 586.

Garner filed a *pro se* Petition for Post–Conviction Relief which was subsequently amended. The amended petition asserted claims of ineffective assistance of counsel, prosecutorial misconduct, and a conviction that is contrary to law.

Garner was represented by a new attorney at his post-conviction relief hearing. The post-conviction court denied Garner's petition on May 13, 1987 on the grounds of waiver. Garner, represented by the Indiana Public Defender, requested and received permission to file a belated motion to correct error (Indiana Rules of Procedure, Post–Conviction Relief Rule 2) addressed to the denial of post-conviction relief. In the motion, among other allegations, Garner unsuccessfully argued he was convicted of an offense not charged and that the record was devoid of evidence of "serious bodily injury." This appeal ensued.

## DECISION

Garner argues the post-conviction court erred when it determined he waived the trial court's error in convicting him of the class A felony robbery. The state argues Garner waived any error because he did not raise it on his direct appeal. Garner asserts the error is fundamental and can be raised at any time.

In *Bailey v. State* (1985), Ind., 472 N.E.2d 1260, our supreme court addressed "the propriety of raising an issue singularly characterized as fundamental error in a post-conviction petition." *Id.* at 1262. Bailey had been convicted of robbery as a class A felony and his conviction had been affirmed on direct appeal. *Bailey v. State* (1980), 274 Ind. 318, 412 N.E.2d 56. He subsequently petitioned for post-conviction relief claiming, in part, that "insufficient evidence was adduced at trial to support the conviction of a Class A felony, resulting in fundamental error...." *Bailey,* 472 N.E.2d at 1262. In responding to Bailey's argument, the court held the remedy of post-conviction relief is not a substitute for a direct appeal. Any issue set forth in a post-conviction petition "must be raised within the purview of the post-conviction rules, e.g., deprivation of the Sixth Amendment right to effective assistance of counsel, or be an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal." *Id.* at 1263. The latter situation existed, according to the court, because *Clay v. State* (1981), 275 Ind. 256, 416 N.E.2d 842 and *Hill v. State* (1981), Ind., 424 N.E.2d 999, the cases creating the basis of his claim, had not been decided at the time of Bailey's trial: "In the instant case, the [insufficiency of the evidence issue] raised by [Bailey was] not available to

him at the time of his trial and direct appeal." *Bailey*, 472 N.E.2d at 1263. Hence, the supreme court addressed the merits of Bailey's argument.

Based upon the date of Garner's conviction, it is obvious our supreme court's decisions in *Clay* and *Hill* were not available to Garner at the time of his trial and his direct appeal. Therefore, Garner has raised "within the purview of the post-conviction rules ... an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal." *Bailey* at 1263. Based upon *Bailey* we determine Garner has set forth errors which are fundamental in dimension. Therefore, we turn to the merits of Garner's argument.

Garner claims the trial court erred when it convicted him of a class A felony robbery whereas the information charged only a class B felony robbery and, in addition, there is no evidence the bystander suffered serious bodily injury.

The state claims that by describing the injury to the bystander as a gunshot wound the information alleges an injury sufficiently grievous to be serious bodily injury. It further asserts there is evidence to show serious bodily injury.

The reversal of Garner's conviction is mandated on two grounds: he was convicted of an offense with which he was not charged and the evidence is insufficient to support his conviction of the class A felony.

The substance of Garner's argument revolves around the robbery statute as it existed in 1979 and the supreme court's 1981 discussion of the legislature's intent. In 1979, robbery was defined as follows:

A person who knowingly or intentionally takes the property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear; commits robbery, a class C felony. However, the offense is a class B felony if it

is committed while armed with a deadly weapon, and a class A felony if it results in either bodily injury or serious bodily injury to any other person.

IC 35–42–5–1 (repealed). In February 1981, our supreme court interpreted the language of the robbery statute in *Clay v. State* (1981), Ind., 416 N.E.2d 842:

The Legislature intended to make robbery a class A felony in two situations: (1) when bodily injury resulted to the person being robbed, and (2) when serious bodily injury resulted to any other person. Bodily injury to the robbery victim need not rise to the serious level to impose class A felony liability on the robber.

*Id.* at 844.

In *Hill v. State* (1981), Ind., 424 N.E.2d 999, the defendant was convicted of robbery as a class A felony. On appeal, he argued "the evidence on the robbery count showed only a class C robbery...." *Id.* The supreme court, based upon *Clay*, reversed Hill's conviction for a class A felony because the evidence did not show serious bodily injury to a bystander and remanded for resentencing as a class C felony.

Therefore, under the 1979 statute, a bystander must suffer "serious bodily injury" in order to support a class A felony robbery conviction. Furthermore, contrary to the state's argument, it is error to charge a defendant with causing "bodily injury" and convict him of a crime for which causing "serious bodily injury"[1] is a required element. *Yarbrough v. State* (1986), Ind., 497 N.E.2d 206; *Hayward v. State* (1988), Ind.App., 524 N.E.2d 15; *Peek v. State* (1983), Ind.App., 454 N.E.2d 450.

The instant information charged Garner, while armed with a deadly weapon, put the robbery victim in fear "by using or threatening the use of force on [the robbery victim] which resulted in bodily injury to [the bystander], to-wit: GUNSHOT WOUND IN THE RIGHT ARM ..." Trial

---

1. IC 35–41–1–2 (1982) (Repealed 1983) defines serious bodily injury as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconscious-

ness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ."

Record at 6. Garner was charged with a crime for which causing "bodily injury" is the required element and was convicted of a crime for which causing "serious bodily injury" is the required element. The deadly weapon allegation elevated the robbery to a class B felony; the allegation of bodily injury to a bystander was insufficient to further elevate it to a class A felony. The state's argument that the gunshot wound allegation alleges "an injury sufficiently grievous to be 'serious bodily injury' within the statute defining the latter term" (Appellee's Brief at 13) is without merit. By alleging the gunshot wound constituted "bodily injury" the state cannot now contend the injury was other than it alleged. Therefore, Garner was erroneously convicted of an offense with which he was not charged.

▬ In addition, the record is devoid of evidence from which a reasonable fact finder could conclude the bystander's injury was serious within the statutory definition of serious bodily injury. The bullet went through the bystander's upper arm, unbeknownst to him, until he "[g]ot in the office.... [a]nd felt the blood running down my arm." Trial Record at 187. He went to the hospital; the wound was treated there and he was released immediately thereafter. The bystander testified he had not had any subsequent problems with the arm. Thus, the record is devoid of any evidence of "death, serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily organ" as required by the statutory definition of "serious bodily injury." IC 35–41–1–2 (1982) (Repealed 1983). The evidence further fails to show the injury created any substantial risk of death. A reasonable fact finder could conclude from this evidence only that the bystander suffered bodily injury.

A similar situation existed in *Larry v. State* (1985), Ind., 477 N.E.2d 94. In *Larry* the defendant pled guilty to an information which was amended "by adding the phrase, 'and said robbery resulted in bodily injury to Lt. Norton' to raise the charge to a Class A felony." *Id.* at 95. Lt. Norton was a bystander. Larry was sentenced for a class A felony. After the supreme court's decisions in *Clay* and *Hill* Larry petitioned for post-conviction relief claiming the factual basis for his plea did not support a class A felony charge. The supreme court agreed and, applying *Clay* and *Hill* retroactively, reversed the decision of the post-conviction court denying Larry relief and ordered that court to permit Larry to withdraw his plea.

Garner was convicted of an uncharged offense, the class A felony robbery. Also, the evidence is insufficient to sustain a conviction for that offense. Therefore, we reverse the judgment of the post-conviction court and order it to vacate Garner's conviction of class A felony robbery. However, based upon the supreme court's determination in Garner's direct appeal that the evidence is sufficient for a reasonable fact finder to conclude Garner was armed with a deadly weapon, the post-conviction court is further ordered to enter a judgment of conviction for the class B felony and to sentence Garner accordingly.

MILLER, J., concurs.

SULLIVAN, J., dissents, with separate opinion.

SULLIVAN, Judge, dissenting.

This case dramatizes the desirability of a bright line distinction to be drawn between the value of finality in criminal convictions and the recognition that some convictions no matter how old may be tainted by "fundamental" error.

Following Garner's conviction, a Motion to Correct Errors was filed by his trial counsel. The Motion to Correct Errors presented the following alleged errors:

1. The prosecutor improperly tried to impeach the defendant of alleged prior felonies;

2. The evidence was insufficient to sustain the conviction.

In his memorandum in support of the Motion, trial counsel stated that the evidence was insufficient for two reasons. "First, there is no evidence of an injury sufficient

to raise the alleged armed robbery herein from a Class 'B' felony to a Class 'A' felony." Record at 2. The second reason challenged the credibility of the witnesses who testified against Garner. The Motion to Correct Errors was denied, and the court appointed a different attorney as appellate counsel. In the direct appeal, appellate counsel raised the same general issues that trial counsel had presented in his Motion to Correct Errors. However, appellate counsel did not specifically argue that there was insufficient evidence of *injury* to support a conviction for robbery as a class A felony. Instead he focused upon the conflict in testimony by the State's witnesses. Our Supreme Court affirmed the conviction finding sufficient evidence to support the conviction.

On September 10, 1984, Garner filed a *pro se* Petition for Post–Conviction Relief. Various other pleadings were filed and continuances granted until an amended Petition for Post–Conviction Relief was filed on January 21, 1987. The amended petition, also pro se, presented the following allegations of error:

"a. Ineffective Assistance of Counsel,

b. Prosecutorial Misconduct,

c. Conviction is in Violation of the Laws of Indiana." Record at 103.

In setting forth the facts in support of the assertion of ineffective assistance of trial counsel, petitioner alleged "counsel also failed to argue that Indiana recognizes a distinction between 'bodily injury' and 'serious bodily injury' during the court's assessment of the conviction as a class A or B felony." Record at 108. Garner did not allege ineffective assistance of appellate counsel.

Garner was represented by a new attorney at the hearing to consider the petition. The court denied Garner's petition on May 13, 1987. Garner *pro se* then filed a second petition for post-conviction relief which the court summarily denied based upon its earlier Findings of Fact and Conclusions of Law.

Garner thru the Indiana Public Defender then requested permission to file a Belated Motion to Correct Errors (P.C.2) addressed to the denial of his first Petition for Post–Conviction Relief. After a hearing, the court allowed Garner to file a Belated Motion to Correct Errors. Apparently to avoid waiver, Garner argued ineffective assistance of trial counsel, appellate counsel, and post-conviction counsel. The court overruled the Belated Motion to Correct Errors and this appeal was perfected.

Garner presents six issues for our review which I would restate as follows:

1. Whether the post-conviction court erred in denying Garner's Petition on the basis of waiver and whether fundamental error occurred when Garner was found guilty and convicted of Class A Robbery where the Amended Information charged him with Class B Robbery;

2. Whether Garner was denied due process of law and the presumption of innocence in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article One, Sections Twelve and Thirteen of the Indiana Constitution, when the conviction for Robbery, a Class A felony, was not sustained by sufficient evidence; [1]

3. Whether Garner was denied the effective assistance of trial, appellate and post-conviction counsel in violation of Article One, Sections Twelve and Thirteen of the Indiana Constitution and the Sixth and Fourteenth Amendments of the United ed States Constitution.

4. Whether Garner was denied his right to trial by jury in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article One, Section Thirteen of the Indiana Constitution, where his waiver of trial by jury was not knowing, intelligent and voluntary;

5. Whether Garner was denied his right to a fair trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article One, Sections Twelve and Thirteen of

---

1. In this regard, I disagree with the majority's framing of the issue which states that "the record is devoid of evidence of serious bodily injury." (Opinion, p. 1309)

the Indiana Constitution by prosecutorial misconduct; and

6. Whether the post-conviction court erred in finding that Garner's grounds for post-conviction relief were waived in violation of his right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution, and Article One, Section Twelve of the Indiana Constitution.

For purposes of discussion, I address Issues 1, 2 and 3 together. Garner urges us to conclude that fundamental error occurred at trial because he was convicted of class A robbery when the amended information only presented facts to support a conviction for class B robbery. Garner raises this issue as fundamental error in order to avoid a determination that the issue was waived.

The substance of Garner's argument revolves around the robbery statute as it existed in 1979 and the Supreme Court's interpretation in 1981 discussing the intent of the legislature. In 1979, robbery was defined as follows:

I.C. 35–42–5–1. Robbery—A person who knowingly or intentionally takes the property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear; commits robbery, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon, and a class A felony if it results in either bodily injury or serious bodily injury to any other person.

Garner was convicted in 1979 and his appeal was decided in December 1980. In February, 1981, our Supreme Court decided *Clay v. State* (1981) 275 Ind. 256, 416 N.E.2d 842.

In *Clay,* the defendant was convicted of a class A robbery. During the course of the robbery, the defendant hit the victim in the face. The victim testified that he suf-

fered a deep bruise to his sinus, a nose-bleed which lasted three days and a headache lasting three weeks. On appeal, the defendant presented the issue that the injury he inflicted on the victim "was not serious enough to warrant conviction of a class A felony." *Id.* at 843. This issue prompted the Supreme Court of Indiana to interpret the language of the robbery statute. The Court held:

"The Legislature intended to make robbery a class A felony in two situations: (1) when bodily injury resulted to the person being robbed, and (2) when serious bodily injury resulted to any other person. Bodily injury to the robbery victim need not rise to the serious level to impose class A felony liability on the robber." *Id.* at 844.

Because of the *Clay* decision, Garner alleges fundamental error in his conviction of a class A robbery when the information only charged him with inflicting "bodily injury" on a non-victim bystander. He contends that *Clay* should be retroactively applied and his sentence reduced to that for a class B felony.

In *Bailey v. State* (1985) Ind., 472 N.E.2d 1260, our Supreme Court addressed "the propriety of raising an issue singularly characterized as fundamental error in a post-conviction petition." *Id.* at 1262. As noted by the majority here, the court held that the remedy of post-conviction relief is not a substitute for a direct appeal. Any issue set forth in a post-conviction petition "must be raised within the purview of the post-conviction rules, e.g., (sic) [2] deprivation of the Sixth Amendment right to effective assistance of counsel, or be an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal." *Id.* at 1263.

Garner argues that his allegation of fundamental error is not freestanding and is reviewable on the merits because the issue was demonstrably unavailable to him at the time of his trial and direct appeal. I dis-

**2.** I must believe that in light of its holding which restricts the availability of post-conviction relief, the court meant the ineffective assistance of counsel and the issue unavailability theories to be the exclusive bases for relief and not merely representative of a group of unenumerated courses for relief.

agree. Although *Clay* was decided after Garner's appeal, the issue which was successfully presented to the Court in *Clay* was that the injury inflicted was not serious enough to warrant conviction of a class A robbery. This very issue was set forth in Garner's original Motion to Correct Errors. The memorandum attached to the Motion alleges insufficient evidence to support the conviction because there was "no evidence of an injury sufficient to raise the alleged armed robbery ... from a class 'B' felony to a class 'A' felony." Record at 2. Therefore, under the Supreme Court's interpretation in *Bailey, supra,* the issue was demonstrably available to Garner on his direct appeal. The error was raised in his Motion to Correct Errors, but not pursued on appeal. The majority disregards the fact that the issue in question was not only available to Garner but was actually raised. That the *Clay* decision in support of the issue raised had not yet been decided does not mean that the issue was not available. Under my interpretation of *Bailey,* Garner may not now present this issue as fundamental error. In this regard a rationale of a decision in a civil appeal is worthy of note. In *St. Catherine's Hospital v. Bergner* (1986) 3d Dist.Ind.App., 493 N.E.2d 1321, 1322, the court quoted from an earlier decision, *Sheraton Corporation of America v. Korte Paper Co., Inc.* (1977) 3d Dist., 173 Ind.App. 407, 363 N.E.2d 1263, 1265, as follows:

> "The ground urged for relief was merely the error of law available and in fact raised in the motion to correct errors. That a subsequent decision of this court in a different case recognized the reality of the error does not alter this. It merely demonstrates that had the claimant appealed he would have succeeded, assuming the allegedly identical evidence."

Another exception discussed in *Bailey* to avoid a finding of waiver is to show ineffective assistance of counsel. Garner does

allege ineffective assistance of post-conviction counsel, apparently to avoid waiver.[3] However, the exception created in *Bailey* to avoid waiver by showing ineffective assistance of counsel must be read in light of our Supreme Court's decisions in *Baum v. State* (1989) Ind., 533 N.E.2d 1200 and *Schiro v. State* (1989) Ind., 533 N.E.2d 1201, *cert. denied* 475 U.S. 1036, 106 S.Ct. 1247, 89 L.Ed.2d 355.

In *Baum v. State, supra,* our Supreme Court held that "[t]he right to counsel in post-conviction proceedings is guaranteed by neither the Sixth Amendment of the United States Constitution nor art. 1, § 13 of the Constitution of Indiana." *Id.* at 1201. In *Schiro v. State, supra,* our Supreme Court cited *Alston v. State* (1988) 1st Dist., Ind.App., 521 N.E.2d 1331, with approval for the following proposition:

> "The court of appeals recently stated in *Alston v. State* (1988), Ind.App., 521 N.E.2d 1331, 1335, that they would not 'take a step backward and create a new vehicle by which a defendant could use a PCR to attack a previous PCR on the grounds of incompetency of counsel in that PCR hearing, and then use yet a third PCR to attack the competency of counsel of the second PCR and so on in perpetuity.'" *Schiro, supra,* at 1205.

In *Alston v. State,*[4] *supra,* our First District discussed the issue of a post-conviction petition addressed to a prior post-conviction proceeding. The court held,

> "[a]n examination of the rule clearly discloses that a post-conviction petition and remedy is addressed solely to the original conviction or plea of guilty. There is nothing within the rule that indicates that a post-conviction petition may be addressed to a prior post-conviction proceeding. Alston cites no authority that so holds. If counsel is inadequate at a prior post-conviction proceeding, a remedy would be to allow the defendant to start over. However, his new efforts

---

**3.** Garner also alleges ineffective assistance of trial counsel and appellate counsel which is discussed separately.

**4.** Although I filed a dissenting opinion in *Alston v. State,* the Supreme Court apparently adopted

the holding of *Alston* in *Schiro v. State, supra,* which is binding. I therefore find it necessary to discuss the rationale presented in *Alston* supporting the holding adopted in *Schiro.*

must still be addressed to events occurring at the trial or guilty plea hearing, and the issues would be determined by prevailing law as though no prior PCR had been filed." *Id.* at 1335.[5]

The apparent meaning of *Baum* and *Schiro* taken in light of the First District's decision in *Alston,* is that ineffective assistance of post-conviction counsel cannot be raised in a subsequent post-conviction petition focusing upon the denial of an earlier post-conviction petition.

Although *Baum, Schiro* and *Alston* all dealt with a post-conviction petition under Post Conviction Rule 1 (PCR 1) addressed to the denial of an earlier PCR 1 petition, the same analysis would seem to apply to a Belated Motion to Correct Errors under Post Conviction Rule 2 (PCR 2) addressed to the denial of a PCR 1 petition. Allowing the petitioner to successfully present ineffective assistance of post-conviction counsel in a PCR 2 petition would permit the petitioner to evade the holdings in *Baum* and *Schiro.* Although Garner presented ineffective assistance of post-conviction counsel in a PCR 2 petition rather than in a subsequent PCR 1 petition, I read *Baum* and *Schiro* to mean that a successful PCR petition in general cannot be addressed to a former PCR proceeding.

That Garner is attempting to avoid waiver is illustrated by the fact that he did file a second Petition for Post Conviction Relief under PCR 1. When the court summarily denied that petition, he then filed a Belated Motion to Correct Errors under PCR 2 alleging the same issue presented in his second petition under PCR 1. Based upon *Baum* and *Schiro* I would hold that the issue of ineffective assistance of post-conviction counsel is not now available to Garner.[6]

I believe my view reflects the specific concern in *Baum* and *Schiro* with respect to a post-conviction challenge (either PCR 1 or PCR 2) to a prior post-conviction proceeding. There may be a distinction, although somewhat tenuous, between raising ineffective assistance of post-conviction counsel in a timely Motion to Correct Errors and raising it in a Belated Motion to Correct Errors addressed to the denial of a post-conviction relief petition. The former is not a post-conviction petition addressed to a prior post-conviction proceeding whereas the latter is. For this reason, a timely Motion to Correct Errors raising the issue of ineffective assistance of post-conviction counsel may not be proscribed by *Baum* and *Schiro.*

For example, in *Murphy v. State* (1985) Ind., 477 N.E.2d 266, our Supreme Court treated the issue of ineffective assistance of post-conviction counsel on the merits through a timely Motion to Correct Errors addressed to the denial of a PCR 1 petition. If *Murphy* is to be reconciled with *Baum,* and *Schiro,* it must be upon grounds that a petitioner may present the issue of ineffective assistance of post-conviction counsel in a timely Motion to Correct Errors after the denial of a PCR 1 petition, but *not* in a Belated Motion to Correct Errors. Although this may seem incongruous, the

5. In *White v. State* (1986) Ind., 497 N.E.2d 893, Indiana's recent landmark PCR decision, our Supreme Court contemplated a subsequent proceeding following affirmance of a denial of post conviction relief. The Court stated:
   "If appellant has any other basis upon which to establish that his plea was not voluntary and intelligent, he may file a new petition." 497 N.E.2d at 906.
   The *Alston* decision as adopted in *Schiro,* also contemplates that a second or subsequent post-conviction petition might result in relief to the petitioner. It however requires the petitioner's "new efforts" be directed to error in the basic conviction. Nevertheless, in light of the waiver considerations embodied in *Bailey v. State, supra,* 472 N.E.2d 1260, as made even more stringent in *Baum v. State, supra,* 533 N.E.2d 1200, and *Schiro v. State, supra,* 533 N.E.2d 1201, unless the conviction is absolutely void, it is difficult to conceive of a situation in which new efforts will achieve a setting aside of a guilty plea or a trial conviction.

6. I note that in *Patton v. State* (1989) 4th Dist. Ind.App., 537 N.E.2d 513, the Fourth District allowed a post-conviction petitioner to allege ineffective assistance of post-conviction counsel in a Belated Motion to Correct Errors. The court addressed the issue on the merits and held that post-conviction counsel was in fact ineffective. Because *Patton* did not address whether the issue of ineffective assistance of post-conviction counsel was available to petitioner after *Baum* and *Schiro,* I would decline to follow it.

distinction I discern is that in a criminal setting a Belated Motion to Correct Errors is a special creature allowed specifically as a post-conviction remedy whereas a timely Motion to Correct Errors is not a post-conviction remedy. Therefore, a timely Motion to Correct Errors is not "a PCR [being used] to attack a previous PCR on the grounds of incompetency of counsel in that PCR hearing." *Schiro, supra,* 533 N.E.2d at 1201. Furthermore, as earlier noted in footnote 3, the Supreme Court must have envisioned *some* situation in which a reviewing court could reach the merits of whether or not post-conviction counsel was ineffective. I base this conclusion upon the fact that the Supreme Court in *Baum* specifically set out a standard for reviewing post-conviction counsel's performance. *Baum, supra,* 533 N.E.2d at 1201. Accordingly, it would appear that the only situation in which an appellate court may ever review the issue of ineffective assistance of post-conviction counsel is where the issue has been preserved in a timely Motion to Correct Errors when one is required under Trial Rule 59 or in a timely perfected appeal when a Motion to Correct Errors is not required. The issue may not be preserved however in a belated appeal allowable only as a post-conviction remedy.

Garner directs our attention to *Heyward v. State* (1988) 1st Dist.Ind.App., 524 N.E.2d 15. In *Heyward,* the defendant was convicted of class A robbery when the facts of the information would only support a conviction for class B robbery. *Heyward* was denied post-conviction relief and the First District reversed relying on *Clay, supra.* There was no issue of whether *Clay* should be applied retroactively because *Heyward* was not convicted until after *Clay* was decided.

Although the *Heyward* case is factually very similar to the case presented here, it is, nevertheless, distinguishable. The court in *Heyward* was asked to review a procedurally different situation than the one before us now. In *Heyward,* the defendant made a timely appeal of the denial of his petition for post-conviction relief presenting both fundamental error and ineffective assistance of counsel both at trial and on direct appeal. The court stated:

"In this case, Heyward failed to preserve for review on direct appeal the errors asserted on this appeal. Thus, unless these errors are of fundamental magnitude, they are deemed waived." *Heyward, supra,* 524 N.E.2d at 17.

The *Heyward* court did not discuss the supreme court's decision in *Bailey v. State* (1985) Ind., 472 N.E.2d 1260, which only contemplates presenting fundamental error involving deprivation of the Sixth Amendment right to effective assistance of counsel or with respect to an issue demonstrably unavailable to petitioner at the time of his direct appeal. *Bailey, supra,* 472 N.E.2d at 1263.

*Heyward* did not follow the precise approach to fundamental error as set forth in *Bailey.* The *Heyward* court addressed, in freestanding form, the issue of whether Heyward was convicted of class A robbery when the information set forth facts which would only support a conviction for class B robbery. The *Heyward* court held that fundamental error had occurred and therefore, the issue was not waived. In another part of the opinion, the court addressed a claim of ineffective assistance of trial and appellate counsel. The court stated that on the issue of whether Heyward was improperly convicted of class A robbery "Heyward's attorney should have been aware of the distinction between 'bodily injury' and 'serious bodily injury.'" *Heyward, supra,* 524 N.E.2d at 20. However, the court did not hold the denial of effective assistance of counsel to be reversible error because it had already reversed Heyward's conviction of class A robbery on the grounds of fundamental error. The outcome of *Heyward* would have been the same even if the court had strictly followed *Bailey.* The *Heyward* court could have addressed the claimed fundamental error by finding that Heyward had been denied his Sixth Amendment right to effective assistance of counsel.

*Heyward* involved a claimed denial of defendant's Sixth Amendment right to counsel (i.e., trial and/or appellate counsel). Therefore, it falls within one of the exceptions created by *Bailey* to allow a petitioner in a post-conviction proceeding to allege

fundamental error and avoid a waiver defense. Garner, however, alleges ineffective assistance of post-conviction counsel. Because of this procedural distinction, Garner may not raise fundamental error whereas Heyward could.

As previously stated, *Baum* holds that the right to effective assistance of post-conviction counsel is not a right guaranteed by the Sixth Amendment. Further, *Schiro* holds that a petitioner cannot raise a claim of ineffective assistance of post-conviction counsel to get to an issue which would otherwise be waived. Therefore, the exception created in *Bailey* is limited by *Baum* and *Schiro* to claims of ineffective assistance of trial and/or appellate counsel which are guaranteed by the Sixth Amendment. The *Bailey* exception does not apply to claims of ineffective assistance of post-conviction counsel.[7]

Because I conclude that Garner is prohibited from asserting ineffective assistance of post-conviction counsel in this appeal, I would hold that the other issues Garner presents are now unavailable to him. Although Garner did present ineffective assistance of trial counsel at his first post-conviction hearing, he did not allege ineffective assistance of appellate counsel in failing to challenge the performance of trial counsel. Since appellate counsel and trial counsel were different, appellate counsel had the first opportunity to raise alleged trial counsel's inadequacies.[8] And, since Garner did not argue ineffective assistance of appellate counsel at his post-conviction hearing, any issue of ineffective trial counsel has not been preserved for our review.

The same result should obtain with respect to reviewing appellate counsel's performance. Garner had the opportunity to argue ineffective assistance of appellate counsel at his post-conviction hearing. Since he did not do so, the issue is now unavailable to him.

As to Issues 4 and 5, Garner argues that he was denied his right to trial by jury and was denied his right to a fair trial due to prosecutorial misconduct. However, since Garner is precluded from alleging ineffective assistance of post-conviction counsel, and Garner did not, in his first post-conviction petition, allege ineffective assistance of appellate counsel for failing to raise the issues which were available to Garner at the time of his direct appeal, I believe we are not at liberty to now review them.

Under Issue 6, Garner makes a final attempt to avoid waiver on all of the foregoing issues by arguing that "[a]ny waiver finding on these allegations ... would be erroneous because the Indiana appellate courts did not apply a procedural bar to post-conviction actions at the time of Garner's 1980 direct appeal." Brief of Petitioner–Appellant at 46.

In support of his contention, Garner cites *Wheat v. Thigpen* (5th Cir.1986) 793 F.2d 621, *cert. denied* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759. In that case, the defendant, Wheat, had petitioned the federal district court for habeas corpus. The State of Mississippi appealed the district court's ruling that the prosecutor's closing argument at sentencing violated the Eighth Amendment. The State argued that the federal district court erred in reaching the

---

**7.** I recognize that this interpretation of *Bailey*, *Baum* and *Schiro* creates a puzzling situation for post-conviction petitioners. If petitioner's post-conviction counsel is competent enough to raise the issues of ineffective assistance of trial and appellate counsel (as occurred in *Heyward*), fundamental error may be addressed upon the merits. However, if petitioner is not competent enough to raise ineffective assistance of trial and/or appellate counsel (as occurred in the present case), petitioner is precluded by *Bailey*, *Baum*, and *Schiro* from raising fundamental error unless (1) the claim of ineffective assistance of post-conviction counsel is preserved in a timely filed Motion to Correct Errors or a timely appeal of the denial of the post-conviction petition, or (2) the issue was

demonstrably unavailable to the petitioner at the time of his direct appeal.

**8.** It is frequently the case that a criminal defendant is represented by different counsel at the appellate level than at trial. It is also common for trial counsel to have prepared the Motion to Correct Errors which until recently was the predicate to an appeal. We should not expect a trial attorney to allege his own ineffectiveness in such a motion. Therefore, in many, if not most such instances, the earliest opportunity to present a claim of ineffective trial counsel would be at the time the appellant's brief is filed upon appeal.

Eighth Amendment question because Mississippi procedure barred the raising of claims in a post-conviction proceeding which were not previously raised in the direct appeal. *Id.* at 624. Since federal courts forego the exercise of their habeas corpus power when an "independent and adequate state ground" exists supporting the State's decision, the State argued that its procedural bar rule should be treated as an "independent and adequate state ground" precluding federal review. *Id.* In determining whether the procedural bar rule was an "independent and adequate state ground," the Fifth Circuit cited the rule established by the United States Supreme Court "that a state procedure rule is not entitled to respect as an adequate and independent state ground unless the procedural rule is 'strictly or regularly followed'". *Id.* The court then held that Mississippi had not strictly or regularly followed its procedural rule at the time of Wheat's direct appeal and therefore the procedural bar did not constitute an "independent and adequate state ground" precluding federal review.

Based upon this case, Garner argues that at the time of his direct appeal, the Indiana appellate courts could recognize fundamental error at any time and not apply a procedural bar to post-conviction actions. Therefore, Garner argues, the trial court erred in applying a procedural bar to his petition for post-conviction relief.

Garner's strong reliance on *Wheat* is not to me persuasive. The instant case is not in federal court nor does it involve the prudential limits upon federal court review. Although the procedural bar involving ineffective assistance of post-conviction counsel set forth in *Baum* and *Schiro* were not in effect at the time of Garner's direct appeal, we should nevertheless be bound by those decisions in reviewing Garner's denial of post-conviction relief at this time. To the extent that Garner's argument impliedly challenges the "retroactive" application of the *Baum–Schiro* reasoning, I would reject it.

On one hand, Garner requests us to apply to his conviction the analysis of the robbery statute enunciated in *Clay* after his direct appeal. On the other hand, he impliedly seeks to preclude the application of the *Schiro–Baum* rationale on grounds that those decisions were rendered after he had been denied post-conviction relief.[9] In essence he claims that had the post-conviction courts correctly applied the law then in effect they would not have held his assertions of ineffective assistance waived and that therefore, upon review, we should not do so. His approach to retroactivity in this sense seems to be somewhat inconsistent.

In any event I deem the matter to be controlled by the rationale of *White v. State, supra,* and its progeny. More particularly, in *Patton v. State* (1987) 2d Dist. Ind.App., 507 N.E.2d 624, *trans. denied,* we observed that *White* had altered the law applicable to a review of post-conviction proceedings and had been and was to be applied retroactively. I see no distinction to be made as concerns the applicability of those decisions which hold issues sought to be presented at various post-conviction stages to be waived. There is legitimate confusion as to when our courts will apply a rule change retroactively and when it will not. In *Martin v. State* (1985) Ind., 480 N.E.2d 543, our Supreme Court made clear that *German v. State* (1981) Ind., 428 N.E.2d 234, enunciating a rule more favorable to persons seeking to set aside guilty pleas, was to be applied prospectively only, i.e., to guilty pleas entered after the date of *German.* The decision in *White v. State* (1986) Ind., 497 N.E.2d 893, which abrogated the *German* rule and effectively returned to the more stringent rule of *Neeley v. State* (1978) 269 Ind. 588, 382 N.E.2d 714, has, however, been uniformly applied retroactively. *Patton v. State, supra.*

In *Rowley v. State* (1985) Ind., 483 N.E.2d 1078, the court reviewed denial of a second post-conviction relief petition following affirmance of a conviction in a direct appeal. The trial court had found the issue of admissibility of evidence induced

---

**9.** This contention is arguably negated by *Williams v. State* (1984) Ind., 468 N.E.2d 1036 (review of guilty plea entered before date of Supreme Court decision is governed by law at

time of guilty plea not law at time of PCR hearing). *See also Gilham v. State* (1985) Ind., 481 N.E.2d 1292.

through hypnosis to have been waived. Our Supreme Court, despite a waiver claim by the State, applied retroactively a decision rendered after the first post-conviction proceeding. It did so because the issue went to the heart of the factfinding process and to the matter of Rowley's guilt or innocence. It must be noted, however, that neither the *Schiro* nor *Baum* decisions were in place at the time.

Another case, *Ramos v. State* (1989) 3d Dist. Ind.App., 541 N.E.2d 300, although decided after *Schiro* and *Baum*, did not discuss those cases in rejecting the State's waiver claim with respect to review of denial of post-conviction relief. Ramos had been convicted in 1980. The conviction was affirmed on direct appeal in 1982 and the post-conviction petition had been denied in 1987. Our Third District held that a change in applicable law after his conviction concerning use of defendant's post-arrest silence should be retroactively applied because the admission of such evidence was fundamental error and had not been waived. The court nevertheless determined that application of the new judicial decision did not render erroneous the denial of post-conviction relief.

Until such time as our Supreme Court gives us additional guidance in the matter we should hold that procedural rules governing review of post-conviction relief proceedings are to be given retroactive effect if the result of such rules is to finalize criminal convictions and discourage collateral attacks.[10] *See Clay v. State* (1989) 2d Dist. Ind.App., 532 N.E.2d 1204, *trans. denied.*

I would hold that the issues presented on this appeal are not now available to Garner and the trial court did not err in denying Garner's Petition for Post–Conviction Relief or his Belated Motion to Correct Errors.

For this reason, I dissent.

---

**10.** I believe this result to be in accord with the trend toward finalizing criminal convictions illustrated not only by our own Supreme Court but also by the United States Supreme Court. In *Teague v. Lane* (1989) —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334, *reh. denied,* —— U.S. ——, 109 S.Ct. 1771, 104 L.Ed.2d 206 the Supreme Court held that a new constitutional rule created by the Court which favors a defendant should generally *not* be applied retroactively, at least in a collateral review setting, because of "the principal of finality which is essential to the operation of our criminal justice system." *Id.* 109 S.Ct. at 1074. The court noted, "without finality, the criminal law is deprived of much of its deterrent effect." *Id.* The court also parenthetically quoted from Justice Harlan's concurring opinion in *Mackey v. United States,* 401 U.S. 667, 691, 91 S.Ct. 1160, 1179, 28 L.Ed.2d 404 (1971):

"No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and everyday thereafter his continued incarceration shall be subject to fresh litigation." *Teague, supra* [109 S.Ct.] at 1074.